UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x    Case No. 1:24-cv-3631-JPC
BKNS MANAGEMENT LLC,

                    **Plaintiff,**

  - against -

FRYSTA MANAGEMENT LLC,

                    **Defendant.**
------------------------------------------------------------------x

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT
OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT**

Joseph Zelmanovitz (JZ-0085)
**STAHL & ZELMANOVITZ**
*Attorneys for Plaintiff*
747 Third Avenue, Suite 33B
New York, New York 10017
(212) 826-6422
jzelmanovitz@szlawllp.com

Plaintiff BKNS Management LLC respectfully submits this reply memorandum in further support of plaintiff's motion for summary judgment in lieu of complaint.

## PRELIMINARY STATEMENT

This case presents the age-old saga of a commercial debtor taking millions of dollars as a loan from a lender, using that money for its purposes, and then seeking to evade repayment using a meritless usury defense.

In opposition to plaintiff's motion for summary judgment in lieu of complaint (removed by defendant to this Court), defendant Frysta Management LLC ("Frysta") makes three arguments, each of which should be rejected as a matter of law.

Frysta first argues that even excluding the $125,000 post-maturity, post-default late fee, the annual interest rate based on plaintiff's calculations exceeds the 25% rate. That is not what the Promissory Note (Khunovich Aff. Exhibit A (the "Note")) expressly provides. The Note provides for a 25% annual interest rate and not a penny more, and the terms of the Note–not the mathematical calculation–is what controls. Any mathematical error in the computation of the amount owed does not establish a usury defense as a matter of law. There can be no dispute that even according to Frysta's calculation of the amount chargeable as interest under the Note, when considered together with the unpaid principal amount of $2 million and the post-maturity, post-default $125,000 late fee, Frysta is liable to plaintiff under the express terms of the Note.

Frysta next argues, erroneously, that the $125,000 post-maturity, post-default late fee should be added to compute the effective interest rate for purposes of usury. As Frysta must concede, the majority rule in the New York federal courts and the established holdings of the New York State courts are that post-default or post-maturity charges are not to be considered in

1

the usury calculation. The usury laws do not apply to defaulted obligations.

Finally, Frysta makes the frivolous argument that the $2 million loan proceeds were not sent to Frysta, but rather to a "non-party" (Kosher Eats LLC) which happens to be an affiliate of Frysta. The Note itself that Frysta executed, however, belies any claim that Frysta did not receive those funds, as Frysta expressly acknowledged on the very first part of the Note that it is obligated on the Note "FOR VALUE RECEIVED." In fact, the two entities, Frysta and Kosher Eats, LLC, are owned by the same person, Noah Lasko, who shamelessly submitted the declaration to the Court on this motion stating that the funds "were not sent to Defendant." Frysta, in fact, used that $2 million received from plaintiff for purposes of remitting the $2 million to a separate lender as an interest advance in order to obtain an $ 8 million loan from that separate lender. That separate loan transaction never materialized, leading Frysta's affiliate, Kosher Eats LLC, to commence a RICO lawsuit against certain parties in the United States District Court for the Central District of California, *Kosher Eats LLC v. Messner Reeves LLP et al.,* Civ. Action No. 2:24-cv-05161, wherein it was alleged that this same $2 million was obtained fraudulently by that separate lender. This designated purpose for the $2 million received pursuant to the Note–in anticipation of Frysta obtaining an $ 8 million loan from a separate lender (which unfortunately did not materialize)--is expressly referred to in paragraph 4 of the Note. Suffice it to say that even Frysta cannot in good faith state that it never received the $2 million from plaintiff. Its weasel-worded statement that the "wire was not sent to Defendant" (Lasko Dec. ¶ 14) in no way denies that the funds were not received. Frysta expressly acknowledged that it received this "value."

## ARGUMENT

**I.    FRYSTA DOES NOT DISPUTE CRITICAL FACTS
THAT COMPEL THE GRANTING OF PLAINTIFF'S MOTION**

Frysta does not dispute the following critical facts, which compel the granting of plaintiff's motion:

1. Frysta does not dispute the existence of the Note or that the Note was executed on Frysta's behalf by Lasko. The Note is dated "April 19, 2023." (Note, header on page 1).

2. Frysta does not dispute that it acknowledged its obligation to pay plaintiff the principal sum of $2 million with interest "FOR VALUE RECEIVED" (Note, page 1).

3. Frysta does not dispute that it was obligated to repay the $ 2 million "on the earlier of (i) six (6) months from the execution of this Note (i.e., October 18, 2023) (the "Maturity Date"); or (ii) an Event of Default . . . ." (Note, ¶ 1(a)). The Note shortened that Maturity Date to "ninety (90) days of the entering into of this Note" in the event Frysta did not secure the $8 million loan from a separate lender, Note, ¶ 4, which turned out to be the case and is the basis for Frysta's RICO complaint in California Federal Court. Thus, the Maturity Date of the loan under the Note is 90 days after April 19, 2023, or August 8, 2023.

3. Frysta does not dispute that the unpaid principal amount of the Note accrues at the annual rate of 25%–not a penny more–and is to be paid "on the Maturity Date," Note, ¶ 1(b), which as stated above is August 8, 2023.

4. Frysta cannot dispute that if any amount due under the Note is overdue, i.e., post Maturity Date, it is obligated to pay "an additional $125,000 if the overdue amount remains unpaid for at least thirty (30) days from when due. (Note, ¶ 1(c)).

5. Frysta does not dispute that it did not pay any part of the $2 million at maturity–it never did so--and that it obviously was much more than 30 days late in doing so. Frysta, in fact, never paid anything until many months after maturity and long after default. This entitles plaintiff to the post-maturity, post-default late fee of $125,000 set forth in paragraph 1(c) of the Note.

6. Frysta does not dispute that a failure "to make any required payment of principal or interest on this Note" constitutes an Event of Default." (Note, ¶ 2(a)).

Thus, Frysta acknowledged the debt, indisputably did not pay the amount due at maturity, and was more than 30 days late in satisfying its payment obligations thereby incurring the $125,000 late fee.

Plaintiff established the requisites for summary judgment on the Note under New York law:

> [T]he plaintiff established its prima facie entitlement to judgment as a matter of law through the promissory note that was executed by [defendant], which contained an unconditional obligation to pay, and a sworn affidavit which averred that the appellants had failed to pay in accordance with the note's terms.

*Torto Note Member, LLC v. Babad*, 192 A.D.3d 843, 144 N.Y.S.3d 193 (2d Dep't 2021), *leave to appeal dismissed*, 38 N.Y.3d 1126, 172 N.Y.S.3d 674 (2022).

As a result, summary judgment should be awarded to plaintiff.

II. <u>**THE NOTE IS NOT USURIOUS ON ITS FACE**</u>

"[W]hen a note is not usurious on its face, a court will not presume usury . . . ." *EMA Fin., LLC v. Joey New York, Inc.*, No. 17-CV-9706, 2019 WL 4600863, *4 (S.D.N.Y., Sept. 22, 2019).

According to Frysta, the interest on the $2 million loan from April 26, 2023 to March 27, 2024, a total of 336 days, should be $460,272.96 ($1,369.86 daily interest X 336 days), as opposed to plaintiff's math which resulted in $476,488.89, a difference of only $16,215.93-- plainly an immaterial amount. Assuming that Frysta's math as opposed to plaintiff's math is correct, and for purposes of this motion plaintiff readily agrees to the numbers proffered by Frysta, there still remains $2,105,272.96 due under the Note including the late fee. Thus based on the express terms of the Note, which is not usurious on its face, Frysta is liable for that amount as of March 27, 2024.

For over 150 years, since the Court of Appeals decision in *Marvine v. Hymers*, 12 N.Y. 223, 231 (1855) ("error in calculation" does not make the contract usurious), reasonable mathematical errors in computation do not establish usury. *See Freitas v. Geddes S&L Ass'n*, 63 N.Y.2d 254, 262, 481 N.Y.S.2d 665 (1984) ("if the parties have made an honest mistake of fact, like a reasonable error in computation . . . there would be no usury because no unlawful intent" (quoting Hershman, Usury and the Tight Mortgage Market, 85 Banking LJ 189, 195)); *Ayres v. Power*, 238 A.D.2d 753, 754 (3d Dep't 1997) ("mistakes in computation do not constitute [usurious] intent" or a "meritorious defense").

In sum, based on the express terms of the Note, which are not usurious on its face, the late fee of $125,000 (*see* Point III below), and according to Frysta's own computation, as of

March 27, 2024 Frysta owes plaintiff under the Note the sum of $2,105,272.96.

### III. POST-DEFAULT LATE FEE CHARGES ARE NOT CONSIDERED IN THE CALCULATION OF USURY

There is no dispute that Frysta did not pay the principal owed under the Note by the Maturity Date of August 8, 2023 (or even by the later date of October 18, 2023). And Frysta made no payments, principal or interest, until December 15, 2023 (Khunovich Aff. Exhibit D)–well beyond any of the Maturity Dates and much more than 30 days after their due date. As stated above, Frysta was in default for a considerable period of time through today. Accordingly, Frysta became obligated to pay the $125,000 set forth in paragraph ¶ 1(c) of the Note.

While Frysta argues that "[t]here is a split of authority regarding whether usury laws apply to defaulted obligations" (Frysta Mem. at 4), the case cited by Frysta, *Beaufort Capital Partners LLC v. Oxysure Sys., Inc.* 2017 WL 913791, *3 (S.D.N.Y., Mar. 7, 2017), holds: "[T]he defense of usury does not apply where . . . the terms of the . . . note impose[s] a rate of interest in excess of the statutory maximum *only after default or maturity*" (quoting *Kraus v. Mendelsohn*, 97 A.D.3d 641, 641, 948 N.Y.S.2d 119 (2d Dep't 2012). This has been the law as applied by the New York State courts to date. *See Bono v. Stim & Warmuth, P.C.*, 215 A.D.3d 911, 912, N.Y.S.3d 552 (2d Dep't 2023) ("the defense of usury does not apply where . . . the terms of the . . . note impose a rate of interest in excess of the statutory maximum only after default or maturity" (citation omitted)); *Torto Note Member, LLC v. Babad*, 192 A.D.3d 843, 144 N.Y.S.3d 193 (2d Dep't 2021), *leave to appeal dismissed*, 38 N.Y.3d 1126, 172 N.Y.S.3d 674 (2022) (same); *F.K. Gailey Co. v. Wahl*, 262 A.D.2d 985, 692 N.Y.S.2d 563 (4th Dep't 1999) (same); *Miller Planning Corp. v. Wells*, 253 A.D.2d 859, 678 N.Y.S.2d 340 (2d Dep't 1998) same).

As stated by the court in *EMA Fin.*, although some courts in this Circuit differ, the "majority rule" in the Second Circuit is that "usury laws do not apply to defaulted obligations." 2019 WL 4600863, at *6 (quoting *Manfra, Tordella & Bookes, Inc. v.Bunge*, 794 F.2d 61, 63 n.3 (2d Cir. 1986)). *See also CDS Bus. Servs. v. H.M.C., Inc.*, 2021 WL 4813185, *7 (E.D.N.Y., May 18, 2021 ("New York's usury laws do not apply to defaulted obligations").

This principle is the prevailing law in New York.[1]

Therefore, the $125,000 late charge is not included as part of the interest calculation for purposes of determining if the Note is usurious.

### IV. FRYSTA ACKNOWLEDGED IT RECEIVED THE $2 MILLION FROM PLAINTIFF

It is with much temerity that Frysta attempts to create the impression that it did not receive plaintiff's $2 million loan because it was sent to a "non-party." The Note itself which Frysta executed, however, belies any claim that Frysta did not receive those funds, as it expressly acknowledged "for value received." That Frysta avoids the issue by stating only that the "wire *was not sent* to Defendant" (Lasko Dec. ¶ 14), but not that the funds *were not received* for the purpose intended by Frysta, proves that this excuse is a sham.

In fact, Frysta used that $2 million received from plaintiff for the purposes expressed plainly in the Note: obtaining an $ 8 million loan from a separate lender. Note, ¶ 4. That

---

[1] Frysta cites to two New York State cases (Frysta Mem. at 3),which are not on point and do not involve post-maturity, post-default late charges under a promissory note. In *Sandra's Jewel Box Inc. v. 401 Hotel, L.P.*, 273 A.D.1 (1st Dep't 2000), involving a lease, the tenant was charged 365% as a penalty for late payments during the term of the lease. In *Cleo Realty Assoc., L.P. v. Papagiannakis*, 151 A.D.3d 418 (1st Dep't 2021), another lease case where the defendant guaranteed the lease, the landlord was seeking to be paid for late charges incurred during the lease term at 48% per year. These are not promissory note post-maturity or post-default cases like those we cite above.

transaction failed, leading Frysta's affiliate, Kosher Eats LLC, an entity which Frysta cannot deny is owned by the same person who signed the Note here, Noah Lasko, to commence a RICO lawsuit against certain parties in the United States District Court for the Central District of California, *Kosher Eats LLC v. Messner Reeves LLP et al.,* Civ. Action No. 2:24-cv-05161.[2] This designated purpose for the $2 million received pursuant to the Note–in anticipation of Frysta obtaining an $ 8 million loan from a separate lender (which unfortunately did not materialize)--is expressly referred to in paragraph 4 of the Note.

Suffice it to say that even Frysta cannot in good faith state that it never received the $2 million from plaintiff. It is irrelevant where Frysta directed the funds to be wired. Frysta expressly acknowledged its receipt in the Note. Nor in response to the Default Notice sent by plaintiff (Khunovich Aff. Exhibit B) did Frysta state (falsely) that the money was never received. Indeed, the fact that Frysta made payments of $480,000 pursuant to the Note further belies any claim that no loan was made.

Fabricated defenses do not defeat a motion for summary judgment.[3] *Office of Comptroller General of Republic of Bolivia on behalf of Bolivian Air Force v. International Promotions & Ventures, Ltd.*, 618 F. Supp. 202, 210 (S.D.N.Y. 1985) (summary judgment will

---

[2] A copy of this RICO complaint is attached as Exhibit A to the accompanying Zelmanovitz Declaration.

[3] Illustrative of the sham nature of Frysta's defense is the comparison to the facts of *Volt Electric NYC Corp. v. A.M.E., Inc.*, 586 F. Supp. 3d 262, 278 (S.D.N.Y. 2022), cited by Frysta (Frysta Mem. at 5), for the proposition that there is a genuine issue of fact in our case as to plaintiff's performance under the Note. *Volt* involved the failure by an electrical contractor to complete its work. In our case, the performance by plaintiff was to loan $2 million, which it did, and which was expressly acknowledged by Frysta on page 1 of the Note. There is no issue of "incomplete" performance.

not be denied where the opposing party proffers "sham and feigned defenses").

As shown by the undisputed facts, plaintiff established the requisites for summary judgment on the Note. *Torto Note Member, supra.*

## CONCLUSION

For the above reasons, plaintiff's motion for summary judgment in lieu of complaint should be granted.

Dated: New York, New York  
       July 11, 2024

Respectfully submitted,

STAHL & ZELMANOVITZ  
*Attorneys for Plaintiff*

By: *Joseph Zelmanovitz*  
      Joseph Zelmanovitz (JZ-0085)  
747 Third Avenue, Suite 33B  
New York, New York 10017  
(212) 826-6422  
jzelmanovitz@szlawllp.com