```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
BKNS MANAGEMENT LLC,                                                   :
                                                                       :
                                Plaintiff.                             :
                                                                       :
                -v-                                                    :   24 Civ. 3631 (JPC)
                                                                       :
FRYSTA MANAGEMENT LLC,                                                 :   OPINION AND ORDER
                                                                       :
                                Defendant.                             :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

This case presents a question that has divided courts in this Circuit: Whether New York's criminal usury law, which caps annual interest on a loan at twenty-five percent, applies to fees imposed upon a borrower's default. In April 2023, Plaintiff BKNS Management LLC ("BKNS") and Defendant Frysta Management LLC ("Frysta") signed a promissory note (the "Note") in the amount of $2 million. After Frysta allegedly defaulted on repaying the principal and interest, BKNS sought to impose a $125,000 penalty pursuant to the terms of the Note. If counted toward the interest amount, that $125,000 late fee would render the Note criminally usurious.

Prior to the case's removal to federal court, BKNS moved for summary judgment in state court pursuant to New York Civil Practice Law and Rules ("CLPR") 3213. That summary judgment motion has since been converted to one under Federal Rule of Civil Procedure 56. This Court finds an 1864 decision of the New York Court of Appeals to be on point and, consistent with the majority view in this Circuit, holds that the $125,000 late fee for Frysta's default does not render the Note facially usurious. Nonetheless, a dispute of material fact remains on the question of whether BKNS structured the Note in a manner such that the penalty exists merely as a cover for usury. Thus, and for reasons that follow, BKNS's motion for summary judgment is denied.

## I. Background[1]

On April 19, 2023, the parties executed the Note.  *See* Dkt. 1-1 at 4-19[2] ("Khunovitch Decl."), Exh. A ("Note").  The terms of the Note provide that "FOR VALUE RECEIVED," Frysta promised to pay BKNS "the aggregate principal sum of two million dollars ($2,000,000.00), with interest, upon the terms and subject to the conditions of this unsecured promissory note (the 'Note') as set forth below."  *Id.* at 1.

Paragraph One of the Note governs "Payment and Prepayment" and reads, in relevant part:

1. **PAYMENT AND PREPAYMENT.**

    (a) REPAYMENT OF PRINCIPAL.  The Borrower shall repay the principal amount of this Note in one lump sum on the earlier of (i) six (6) months from the execution of this Note (i.e., October 18, 2023) (the "Maturity Date"); or (ii) an Event of Default (as defined hereinafter). The obligations of Borrower under this Note shall be secured by Lasko Getaways LLC's (or any affiliate or subsidiary) Passover program operations, such that, in addition to any other remedies provided to Lender hereunder if the Borrower defaults under this Note and such default continues for a period of at least thirty (30) days, Lender shall be entitled to utilize or otherwise sell 135 rooms at the 2024 Passover program or thereafter if no program takes place.

    (b) PAYMENT OF INTEREST.  The unpaid principal amount of this Note shall accrue interest (computed on the basis of a 365-day year) as of the date of this Note of twenty-five percent (25%).  Borrower shall repay the total interest owed on the Maturity Date.

    (c) ADDITIONAL INTEREST.  If payment of any amount due under this Note shall be overdue, (i) such overdue amount shall continue to bear interest from and after the Maturity Date, to and including the date when paid in full; and (ii) Lender shall be entitled to collect an additional $125,000 if the overdue amount remains unpaid for at least thirty (30) days from when due.

---

[1] The Court excused the parties from filing statements of undisputed material fact, as typically required by Local Civil Rule 56.1 for summary judgment motions.  *See* Dkt. 7.  As such, the following facts, none of which appear to be in dispute, are drawn from the exhibits filed by the parties.  *See Clarus Corp. v. HAP Trading, LLC*, No. 22 Civ. 8132 (JPC), --- F. Supp. 3d ----, 2025 WL 833453, at *4 n.2 (S.D.N.Y. Mar. 14, 2025) (relying in part on "the exhibits filed by the parties" to adjudicate a summary judgment motion).

[2] As the page numbers of Docket Number 1-1 are not consistently paginated, this range refers to the ECF-generated page number.

*Id.* ¶ 1(a)-(c).  The Note sets forth that an "Event of Default" occurs when, as relevant here, "[t]he Borrower shall fail to make any required payment of principal of or interest on this Note."  *Id.* ¶ 2(a).  In an Event of Default, the Note provides:

> the Lender may, without limiting any other rights it may have at law or in equity, by written notice to the Borrower, declare the unpaid principal of and interest on this Note due and payable, whereupon the same shall be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which the Borrower hereby expressly waives, and the Lender may proceed to enforce payment of such principal and interest or any part thereof in such manner as it may elect in its discretion.  In each and every Event of Default, the unpaid principal of and interest on this Note shall be immediately due and payable without presentment, demand, protest or notice of any kind, all of which the Borrower hereby expressly waives, and the Lender may proceed to enforce payment of such principal and interest or any part thereof in such manner as it may elect in its discretion.

*Id.* ¶ 2(b).

On April 26, 2023, BKNS wired $2,000,000 to a non-party, Kosher Eats LLC, which BKNS describes as "an affiliate of Frysta."  Khunovitch Decl. ¶ 10; Khunovitch Decl., Exh. C (wire transfer confirmation reflecting that $2 million was sent from BKNS to Kosher Eats LLC); Dkt. 9 ("Reply") at 2; *see* Dkt. 8-1 ("Lasko Decl.") ¶ 14 ("Plaintiff's April 26, 2024 wire was not sent to Defendant.").  Between December 2023 and March 2024, Frysta made payments on the Note totaling $480,000.  *See* Khunovitch Decl., Exh. D; Khunovitch Decl. ¶¶ 12-13.  Frysta did not make a payment on the Note on March 27, 2024, as scheduled, and has not made any further payments on the Note since.  Khunovitch Decl. ¶¶ 11-13.

On March 27, 2024, BKNS sent Frysta a notice of default pursuant to Paragraph 2 of the Note.  Khunovitch Decl., Exh. B.  On April 8, 2024, BKNS filed a motion for summary judgment in lieu of a complaint under CPLR 3213 in the Supreme Court of New York, New York County. *See* Dkt. 1-1 at 2-3, 23-29 ("Motion"); *see Better Holdco, Inc. v. Pierce*, No. 22 Civ. 9580 (AT), 2023 WL 6385996, at *2 (S.D.N.Y. Sept. 29, 2023) ("Under CPLR 3213, when 'an action is based

3

upon an instrument for the payment of money only,' the plaintiff 'may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint.'" (quoting N.Y. C.P.L.R. 3213)). BKNS's motion seeks a judgment of $2,121,388.89, representing $2,000,000 in the unpaid balance of the Note and $121,388.89 in the balance of an owed late fee, as well as additional interest accrued until the date of entry of judgment. Motion at 1.[3]

On May 10, 2024, Frysta removed this matter to this Court. Dkt. 1. BKNS's CPLR 3213 motion was automatically "converted to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure" upon removal. *Better Holdco*, 2023 WL 6385996, at *2 (quoting *UBS AG, London Branch v. Greka Integrated, Inc.*, No. 21-1385-cv, 2022 WL 2297904, at *2 (2d Cir. June 27, 2022)); *see* Dkt. 7 (order determining that Plaintiff's motion under CPLR 3213 "should be treated as a summary judgment motion under Federal Rule of Civil Procedure 56, as is the usual practice in this District"). Frysta opposed the motion on July 8, 2024. Dkt. 8 ("Opposition"). BKNS filed a reply on July 11, 2024. Dkt. 9.

On March 26, 2025, the Court ordered the parties to file supplemental letter briefs on certain issues. Dkt. 10. The parties filed those briefs on April 9, 2025. Dkt. 11 ("BKNS Supp. Br."); Dkt. 12 ("Frysta Supp. Br."). The Court heard oral argument on the motion on May 7, 2025. The Court afforded each party further opportunity to respond to certain points of the other, and BKNS filed an additional supplemental letter brief on May 14, 2025. Dkt. 18.

## II. Legal Standard

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate '[w]here the record taken as a whole could not

---

[3] As BKNS's Motion, which was filed along with the Khunovitch Declaration, is consistently paginated, the Court cites to the Motion using its internal pagination.

lead a rational trier of fact to find for the non-moving party.'" *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 620 (2d Cir. 2016) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'" *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In conducting this review, the Court must "resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Mhany Mgmt.*, 819 F.3d at 620.

"The movant bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,' and, if satisfied, the burden then shifts to the non-movant to present 'evidence sufficient to satisfy every element of the claim.'" *Chen*, 2019 WL 1244291, at *4 (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)). The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted). The non-movant must present more than a "scintilla of evidence" to survive summary judgment. *Anderson*, 477 U.S. at 252. "Where no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586).

### III. Discussion

The Note is governed by New York law, Note ¶ 8, and the parties apply New York law in their briefs, *see* Motion at 4-5; Opposition at 3-5. The Court therefore applies New York law to this dispute. *See Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) ("The parties' briefs assume

5

that New York law controls, and such implied consent is sufficient to establish choice of law." (internal quotation marks and alteration omitted)).

"Under New York law, to make out a *prima facie* case for recovery on a promissory note a plaintiff must simply show proof of a note and failure to make payment." *Tabatznik v. Turner*, No. 14 Civ. 8135 (JFK), 2016 WL 1267792, at *5 (S.D.N.Y. Mar. 30, 2016) (internal quotation marks omitted). BKNS has made out a *prima facie* case by providing both the Note and evidence of Frysta's failure to make full payment. *See* Note; Khunovitch Decl. ¶¶ 10-13; Khunovitch Decl., Exh. D. The burden now shifts to Frysta to "prove the existence of a triable issue of fact in the form of a *bona fide* defense against the note." *Tabatznik*, 2016 WL 1267792, at *5 (internal quotation marks omitted).

Frysta appeals, *inter alia*,[4] to the defense of usury. *See* Opposition at 4-5; Frysta Supp. Br. at 1-3. "In an action to recover on a note, usury is an affirmative defense and the party seeking to void the loan agreement bears the burden of proving usury." *Adar Bays, LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612, 623 (N.Y. 2021). "To successfully raise the defense of usury, a debtor must allege and prove by clear and convincing evidence that a loan or forbearance of money, requiring interest in violation of a usury statute, was charged by the holder or payee with the intent to take interest in excess of the legal rate." *Blue Wolf Cap. Fund II, L.P. v. Am. Stevedoring Inc.*, 961 N.Y.S.2d 86, 89 (1st Dep't 2013). There are four elements to proving usury: (1) a loan that (2) requires the principal to be repaid and (3) charges interest greater than that allowed by statute, and

---

[4] Frysta advances two additional arguments in opposing BKNS's summary judgment motion. First, Frysta contends that the amount sought in BKNS's moving papers—regardless of the rate of interest in fact provided under the terms of the Note—reflects an annualized interest calculation that would exceed twenty-five percent and thus also would be criminally usurious. Opposition at 3-4. Second, Frysta argues that BKNS did not perform under the contract because the funds were wired to Kosher Foods LLC, rather than Frysta itself. *Id.* at 5. The Court does not consider these alternative bases for denying summary judgment, in light of its conclusion that summary judgment is improper because a triable issue of fact exists concerning whether the Note is usurious.

(4) intent to violate the usury statutes. *Apollo Cap. Corp. v. Astra Veda Corp.*, No. 23 Civ. 9708 (AS), 2024 WL 3729093, at *4 (S.D.N.Y. Aug. 7, 2024). "If usury can be gleaned from the face of an instrument, intent will be implied and usury will be found as a matter of law." *Blue Wolf Cap. Fund II*, 961 N.Y.S.2d at 89. But "where usury does not appear on the face of the note, usury is a question of fact." *Adar Bays*, 179 N.E.3d at 623 (internal quotation marks omitted).

New York law provides for both civil and criminal usury, with different rules applying to each. "New York's 'civil usury cap' forbids charging interest on a 'loan or forbearance' at a rate above 16% annually." *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 140 (S.D.N.Y. 2017) (citing N.Y. Gen. Oblig. Law § 5-501(1)-(2); N.Y. Banking Law § 14-a(1)). "The Second Circuit has instructed, in dictum and in reference to New York's distinct *civil* usury law, that New York 'usury laws do not apply to defaulted obligations.'" *Union Cap. LLC v. Vape Holdings, Inc.*, No. 16 Civ. 1343 (RJS), 2017 WL 1406278, at *8 (S.D.N.Y. Mar. 31, 2017) (quoting *Manfra, Tordella & Brookes, Inc. v. Bunge*, 794 F.2d 61, 63 n.2 (2d Cir. 1986)). Moreover, "[g]enerally, corporations may not assert a civil usury defense." *Madden*, 237 F. Supp. 3d at 140 (citing N.Y. Gen. Oblig. Law § 5-521(1)). The civil usury cap therefore has no import here.

Instead, Frysta urges that the Note violates New York's criminal usury law. "New York's 'criminal usury cap' makes it a felony to knowingly charge or collect interest on a 'loan or forbearance' at a rate above 25% annually." *Id.* at 141 (citing N.Y. Penal Law § 190.40). "Nothing prevents a corporation from asserting a criminal usury defense." *Id.* (citing N.Y. Gen. Oblig. Law § 5-521(3)). Under New York law, a contract found to be criminally usurious is void *ab initio*. *See Adar Bays*, 179 N.E.3d at 621 ("[L]oans proven to violate the criminal usury statute are subject to the same consequence as any other usurious loans: complete invalidity of the loan instrument.").

The Note's general interest rate is set exactly at 25%, *see* Note ¶ 1(b), so it is not transparently criminally usurious. But Frysta argues that the Note's post-default $125,000 penalty,

7

*see id.* ¶ 1(c), should be treated as a component of interest and therefore the Note is void because, when combined with the general interest rate of 25%, the Note imposes an interest rate exceeding the maximum permitted by New York's criminal usury laws.  *See* Opposition at 4-5; Frysta Supp. Br. at 1-3.  BKNS disagrees, responding that New York's usury laws do not apply to defaulted obligations and therefore the $125,000 fee is not included in the calculation of interest.  *See* Reply at 6-7; BKNS Supp. Br. at 1-3.

### A. The Note Is Not Facially Usurious Under New York's Criminal Usury Law

Under the *Erie* doctrine, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "a federal court sitting in diversity applies the law of the state in which it sits, and 'the views of the state's highest court with respect to state law are binding on the federal courts.'"  *Ray v. Watnick*, 182 F. Supp. 3d 23, 31 (S.D.N.Y. 2016) (quoting *Wainwright v. Goode*, 464 U.S. 78, 84 (1983)); *see Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, 714 F. Supp. 3d 416, 431 (S.D.N.Y. 2024) ("If the state's highest court has not addressed an issue, th[e court sitting in diversity] must predict how that court would do so.").  In support of its motion, BKNS points to various opinions of the New York Supreme Court's Appellate Division, which "can be read to suggest that the criminal usury cap does not apply to defaulted obligations."  *Madden*, 237 F. Supp. 3d at 143 (collecting cases); *see* Reply at 6; BKNS Supp. Br. at 3.  For example, the Second Department in *Torto Note Member, LLC v. Babad*, 144 N.Y.S.3d 193 (2d Dep't 2021), rejected a plaintiff's appeal "to the applicability of the defense of criminal usury" on the basis that "[t]he defense of usury does not apply where . . . the terms of the . . . note impose a rate of interest in excess of the statutory maximum only after default or maturity."  *Id.* at 195 (collecting cases); *see also Klapper v. Integrated Agric. Mgmt. Co.*, 539 N.Y.S.2d 812, 814 (3d Dep't 1989) ("The defense of usury does not apply where the terms of a promissory note impose a rate of interest in excess of the statutory maximum only after maturity of the note.").

8

"While the Second Circuit has not squarely ruled on the issue, the majority of district courts in this Circuit to have considered the issue have held that New York's [criminal] usury laws do not apply to default interest rates." *Blue Citi, LLC v. 5Barz Int'l Inc.*, 338 F. Supp. 3d 326, 336 (S.D.N.Y. 2018) (collecting cases). A minority view, however, emerged starting with the decision in *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130 (S.D.N.Y. 2017), which held that "the New York Court of Appeals, were it to face this situation, would hold that the criminal usury cap limits interest charged on debts to 25% annually, even for defaulted debts." *Id.* at 144; *see, e.g.*, *Union Cap.*, 2017 WL 1406278, at *8 (following the analysis in *Madden*); *In re Dixon Holdings, LLC*, No. 24 Bk. 11 (RCT), 2024 WL 3949446, at *4-7 (Bankr. M.D. Fla. Aug. 23, 2024) (finding "*Madden* and its progeny persuasive" and "consistent with New York's strong public policy against usury").

The following year, the court in *Blue Citi* reached a different result, finding unpersuasive several of the cases relied on in *Madden* because they "did not squarely decide whether the criminal usury laws apply to default interest," and rather dealt with issues of contractual interpretation. 338 F. Supp. 3d at 336. The court in *Blue Citi* concluded that "while it is possible the New York Court of Appeals will see the issue differently . . . the policy judgments underlying the usury laws do not apply to agreed-upon default interest rates," concurring "with the majority view in this Circuit that default interest provisions do not render a note usurious." *Id.* at 337. Several other courts in this Circuit subsequently joined *Blue Citi* in rejecting the minority position reflected in *Madden*. *See LG Cap. Funding, LLC v. PositiveID Corp.*, No. 17 Civ. 1297 (NGG) (SJB), 2019 WL 3437973, at *11-13 (E.D.N.Y. July 29, 2019) (agreeing with the majority view and rejecting *Madden*), *report and recommendation adopted*, 2019 WL 4564882 (E.D.N.Y. Sept. 20, 2019); *LG Cap. Funding, LLC v. One World Holding, Inc.*, No. 15 Civ. 698 (SJ), 2018 WL 3135848, at *11-13 (E.D.N.Y. June 27, 2018) (discussing this divide and concluding that *Blue Citi* has the better of the argument).

9

This Court also adopts the majority view and follows a holding of the New York Court of Appeals from over 160 years ago in *Sumner v. People*, 29 N.Y. 337 (1864). There, the New York Court of Appeals considered a conviction for the offense of receiving usury. *Id.* at 337. John B. Burdick owned a farm subject to an $800 mortgage held by Nathaniel Sumner, which was payable in installments with annual interest. *Id.* When the principal of the mortgage became payable in 1856, Burdick had paid the interest but no part of the principal. *Id.* Burdick applied to Sumner to obtain time for the payment of the principal, and signed an agreement stating, "If I do not pay N. Sumner the $800 I owe him by December 5, 1857, I will give him sixteen dollars extra. Nov. 30, 1857." *Id.* at 337-38. This agreement was endorsed, in Sumner's handwriting, "Received the within sixteen dollars." *Id.* at 338.

Sumner was indicted in the oyer and terminer and tried in the court of sessions of Delaware County, New York,[5] for the offense of receiving usury above the statutory limit of seven percent. *Id.* at 337. Burdick testified that he had paid the principal and lawful interest, in addition to the sixteen dollars. *Id.* at 338. Burdick's brother also testified that Burdick had paid Sumner an extra two percent, in addition to the interest. *Id.* Sumner moved for a directed verdict, arguing that "the sixteen dollars extra was taken on a contract for a penalty for the non-performance thereof, and not for a loan or forbearance of money." *Id.* This motion was denied and the court "decided that there was evidence sufficient to submit the case to the jury." *Id.* Sumner asked the court to charge the jury "that if the sixteen dollars extra was paid to [Sumner] by [Burdick], 'on the happening of

---

[5] Delaware County's Court of Oyer and Terminer was a criminal court, which heard cases between 1803 and 1895 and has since been absorbed into the County Court. *See* Ray LaFever, Historical Society of the New York Courts, History of Delaware County: Bench and Bar, https://history.nycourts.gov/wp-content/uploads/2021/09/County-Legal-History_Delaware-County-min.pdf, at 49 (Aug. 30, 2021) (last accessed April 28, 2025), *available through the Internet Archive*, https://web.archive.org/web/20250418161039/https://history.nycourts.gov/wp-content/uploads/2021/09/County-Legal-History_Delaware-County-min.pdf (last accessed May 27, 2025). Delaware County's Court of General Sessions was a criminal court which heard cases between 1797 and 1895, at which time its cases also were carried over to the County Court. *Id.*

any contingency over which the said Burdick had a control, it was not usury.'" *Id.* The court did not deliver this jury instruction, and Burdick was found guilty and sentenced to pay a $100 fine. *Id.* at 338-39.

The New York Court of Appeals reversed this judgment and remanded for a new trial. *Id.* at 339-41. The Court of Appeals held that the trial judge erred in refusing to issue Sumner's requested jury charge concerning usury. *Id.* This holding rested upon the principle that "[t]o constitute usury, there must be either a payment or an agreement by which the party taking it is entitled to receive more than seven per cent. If the payment is conditional, and that condition is within the power of the debtor to perform, so that the creditor may by the debtor's act be deprived of any extra payment, it would not be usurious." *Id.* at 339-40.

Proceeding to recount the origin of this principle, the New York Court of Appeals relied on prior common law cases. The court articulated the proposition that "[i]f the gain to the lender beyond the legal rate of interest is made dependent on the will of the borrower, as where he may discharge himself from it by payment of the principal, it is not usury." *Id.* at 340 (citing *Pomeroy v. Ainsworth*, 22 Barb. 124 (N.Y. Sup. Ct. 1856)). Thus, the Court of Appeals explained that "a bill payable in four instal[l]ments, with the interest added, and conditioned that the whole shall become due if default is made in one installment is not usurious, but a penalty. And if more than legal interest be reserved upon a contract for the loan of money, yet if it be a part of the agreement that the borrower may discharge himself from payment of any interest by repayment of the principal on a certain day, the case does not fall within the [usury] statute." *Id.* (citations omitted).

Relying on this "plain proposition of law," the New York Court of Appeals determined that, although the precise jury charge was not provided on appeal, it could not presume the trial court charged the jury correctly, since the contract would not be usurious on its face. *Id.* at 340-41. Three judges dissented, reasoning that an inference could be drawn that the trial court properly

11

charged the jury on the law but provided an additional instruction that the jury could still find the contract usurious if it determined this penalty was merely a cover for usury. *Id.* at 342-45.

*Sumner* squarely addresses the issue at hand. Notably, all the judges of the New York Court of Appeals involved in that decision agreed with the (apparently historically uncontroversial) legal principle that when a promissory note imposes a required payment as a penalty for default, that penalty is not included in the calculation of interest for the sake of determining whether an individual has violated the criminal usury law because the borrower can avoid the penalty by simply repaying the principal. *See id.* at 340-43. The New York Court of Appeals reiterated *Sumner*'s conclusion fifty-five years later. *See Diehl v. Becker*, 125 N.E. 533, 534-35 (N.Y. 1919) ("The majority of the Appellate Division, however, has held that by its terms [the borrower] might relieve himself of all further liability by payment of the principal and interest of the loan. If so, there is no question of usury involved, even though on certain contingencies a greater amount would become due." (citing *Sumner*)). Under the *Erie* doctrine, "[o]n matters of state law, the Court must follow the decisions of the state's highest court." *Citibank*, 714 F. Supp. 3d at 431.

Nor is there any reason to believe that New York law on this issue has changed in the 160 years since *Sumner* was decided. To the contrary, in recent years, New York courts have relied on *Sumner* for this proposition. *See Hamilton Cap. VII, LLC, I v. Khorrami LLP*, 22 N.Y.S.3d 137 (Table), n.14 (N.Y. Sup. Ct. Aug. 17, 2015) ("[W]here the rate of return on a loan to a law firm is dependent on the outcome of the firm's cases, the effective interest rate is considered to be based upon a contingency which is in the control of the debtor and, therefore, usury laws do not apply." (internal quotation marks omitted)); *Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*, 950 N.Y.S.2d 723 (Table) (N.Y. Sup. Ct. Mar. 29, 2012) ("Where a transaction involves interest to be paid based upon a contingency which is in the control of the debtor, usury will not apply.").

Moreover, the decisions of the Appellate Division have rested upon the same logic as *Sumner*, holding that post-default obligations are not included in the calculation of interest because they can be avoided by timely payment, thereby demonstrating continuity in New York law on this issue. *See, e.g.*, *Salamone v. Russo*, 15 N.Y.S.3d 344, 345-46 (2d Dep't 2015) (collecting cases).[6]

The New York Court of Appeals also recently addressed the application of New York's criminal usury law in *Adar Bays, LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612 (N.Y. 2021). In recounting when contingencies are properly included in the calculation of interest, *Adar Bay* cited two cases, each of which cited *Sumner* for the same holding for which the Court herein relies on *Sumner*. *Id.* at 624 (citing *Browne v. Vredenburgh*, 43 N.Y. 195 (1870), and *Diehl*, 125 N.E. 533). Thus, setting aside that this Court has no latitude to break from the clear holding of the New York Court of Appeals, there is no apparent reason to suspect that New York law has changed since *Sumner*'s issuance and good reason to think it has not.

Frysta further contends that the Note is facially usurious because one of the conditions Frysta was required to perform to avoid the $125,000 fee was not within its control. Frysta Supp. Br. at 2. Paragraph 4 of the Note provides that the loan was to enable Frysta to secure $8 million from a separate lender under a separate loan agreement. Note ¶ 4. If Frysta did not secure that $8 million, it would pay BKNS the full principal and twenty-five percent interest within ninety days

---

[6] Indeed, most modern Appellate Division opinions on this issue, many of which simply assert this proposition of law as a truism, can be traced to *Sumner* for its holding. For example, one of the more frequently cited cases on this issue is the Third Department's opinion in *Klapper*, 539 N.Y.S.2d at 814 ("The defense of usury does not apply where the terms of a promissory note impose a rate of interest in excess of the statutory maximum only after maturity of the note."). For this holding, *Klapper* cited *Flynn v. Dick*, 215 N.Y.S.2d 382 (1st Dep't 1961) ("The defense of usury is unavailing to the defendants. The note is not invalid by reason of the provision thereof calling for the payment of interest in excess of six per cent 'after maturity.'"). *Flynn*, in turn, cited *Florida Land Holding Corporation v. Burke*, 238 N.Y.S. 1 (N.Y. Sup. Ct. 1929) ("When an excessive rate of interest is made payable only in the event of default in payment of the principal on its due date, there is no usury, because the debtor may relieve himself of all liability by paying the principal and interest theretofore due."). *Florida Land Holdings* relied on two cases for this statement: *Diehl* and *Sumner*.

of entering into the Note. *Id.* Frysta's argument assumes that some degree of reliance on outcomes involving third parties will remove a conditional penalty from *Sumner*'s protection. Frysta provides no New York case law in support of this suggestion, and analogous New York authority suggests otherwise. *See Hamilton Cap. VII, LLC I*, 22 N.Y.S.3d 137 (Table), n.14 ("[W]here the rate of return on a loan to a law firm is dependent on the outcome of the firm's cases, the effective interest rate is considered to be 'based upon a contingency which is in the control of the debtor' and, therefore, usury laws do not apply." (citing, *inter alia*, *Sumner*, 29 N.Y. 337)). Whether Frysta could have obtained a third-party loan is a contingency that was, at least in part, in its control, and therefore the Court sees no reason to hold the Note facially usurious on this ground.

Frysta also cites the First Department's statement in *Blue Wolf Capital Fund II, Limited Partnership v. American Stevedoring, Inc.*, 961 N.Y.S.2d 86 (1st Dep't 2013), that "[i]f an instrument provides that the creditor will receive additional payment in the event of a contingency beyond the borrower's control, the contingent payment constitutes interest within the meaning of the usury statutes." *Id.* at 89; *see* Frysta Supp. Br. at 2-3. But no such contingency exists here, as New York law holds that default in the payment of an agreed-upon obligation is in control of the debtor. *See Salamone*, 15 N.Y.S.3d at 345-46 (holding that the applicable interest rate "was not usurious because it involved interest to be paid based upon a contingency within the control of the debtor—in this case, default in the payment of an agreed-upon obligation—and the debtor could have avoided the imposition of such charges simply by paying promptly"); *see also Sumner*, 29 N.Y. at 340 ("If the payment is conditional, and that condition is within the power of the debtor to perform, so that the creditor may by the debtor's act be deprived of any extra payment, it would not be usurious.").

Accordingly, this Court holds that the Note's $125,000 late fee does not render the Note usurious on its face.

**B.     A Genuine Issue of Material Fact Precludes Summary Judgment**

The Court's analysis does not end with a finding that the Note is not facially usurious, however. Under New York law, a note may be found usurious even if usury is not evident on its face. *See Adar Bays*, 179 N.E.3d at 623. Although Frysta does not expressly raise this argument,[7] *Sumner* and other New York cases intimate that whether the usury law is implicated in this situation hinges on a fact-finder's conclusion about whether the additional interest is a penalty or merely "a cover for usury." *Sumner*, 29 N.Y. at 339; *see id.* ("Whether the $16 was to be paid as a penalty for breach of a contract, or whether it was a cover for usury, could only be ascertained from the acts and admissions of parties."). If it is the former, the usury laws are not implicated; if the latter, the contract is void as usurious. *See Matthews v. Coe*, 70 N.Y. 239, 242 (1877) ("Such contracts, proper and usual in form, may be made covers for usury, and when this fact is established by competent proof, they are within the condemnation of the laws against usury, and void.").

As the New York Court of Appeals recently observed in *Adar Bays*, New York's "cases involving criminal usury show strict attention to additional fees exacted sometimes creatively through loan instruments." 179 N.E.3d at 623. "At bottom, 'because a usurer usually seeks to conceal the usury, and to accomplish the purpose by indirect methods, questions of usurious intent and whether a transaction is a cover for usury are typically questions of fact.'" *Apollo Cap. Corp.*, 2024 WL 3729093, at *5 (quoting *Adar Bays*, 179 N.E.3d at 625). Therefore, the New York Court of Appeals has held that whether a specific contract includes a fee as a cover for usury is "a question of fact" that a court "could neither assume nor decide." *Hammelburger v. Foursome Inn*

---

[7] The Court considers this issue *sua sponte*, in line with the Second Circuit's instruction that "the district court may not grant the motion [for summary judgment] without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) (Sotomayor, J.). The Court additionally notified the parties to be prepared to address this issue at oral argument. *See* Dkt. 14.

*Corp.*, 431 N.E.2d 278, 286 (N.Y. 1981); *see United States v. Orozco-Prada*, 636 F. Supp. 1537, 1543 n.7 (S.D.N.Y. 1986) ("Under the *Hammelburger* test, whether or not a 'commission' or 'guarantee fee' is a cover for usury is question of fact.").

Accordingly, under New York law, a court's determination that a note is not facially usurious does not end the inquiry, but instead implicates a triable issue of fact. *Freitas v. Geddes Sav. & Loan Ass'n*, 471 N.E.2d 437, 443 (N.Y. 1984) ("It is the prevailing view that where usury does not appear on the face of the note, usury is a question of fact."); *see Adar Bays*, 179 N.E.3d at 623 (citing *Freitas*, 471 N.E.2d 437). A fact finder therefore must determine "whether a fair, reasonable, usual and customary allowance for the trouble, and inconvenience of transacting the business only has been secured, or whether, under the guise of a commission for services, trouble and expenses, the lender has sought to, and has reserved and secured to himself compensation for the use of his money in excess of the rate of interest allowed by law." *Matthews*, 70 N.Y. at 242. In that determination, "the *onus* is upon the party seeking to impeach them for usury, to prove the guilty intent, and that the contract is a cover for usury and for the loan of money upon usury." *Id.*

Frysta has argued that the Note's "structure reveals that the $125,000 'additional interest' is not a true post-default provision" because the Note "creates a peculiar scenario where, on the date of the purported 'default,' the borrower is deemed to be already 30 days late through a retroactive resetting of the due date." Frysta Supp. Br. at 2. Accordingly, Frysta contends that "[t]his manipulative drafting appears designed to circumvent usury laws." *Id.* Frysta has argued, therefore, that BKNS structured the Note in such a way that the $125,000 "penalty" exists merely as a cover for usury. Since a dispute of material fact on this issue remains, and particularly given the sparse factual record presented on the instant motion, BKNS has not "carried its burden," and the entry of summary judgment is improper. *Apollo Cap. Corp.*, 2024 WL 3729093, at *5.

### III. Conclusion

For these reasons, BKNS's motion for summary judgment is denied. The parties shall appear for a status conference on June 10, 2025, at 10:30 a.m., to discuss a date for trial in this matter. Unless the Court orders otherwise, the Court will conduct the conference by teleconference on Webex. At the scheduled time, counsel for all parties should call (855) 244-8681, access code 2302 755 2307.

SO ORDERED.

Dated: May 27, 2025
New York, New York

_____
JOHN P. CRONAN
United States District Judge